1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE DEJESUS RODRIGUEZ,                      No.  2:15-cv-0158 GGH PS

12              Plaintiff,

13        v.                                      ORDER

14   VERONICA VEGA,

15              Defendant.

16

17        Plaintiff is proceeding in this action pro se and in forma pauperis pursuant to 28 U.S.C. §

18   1915.  This proceeding was referred to this court by Local Rule 302(21), pursuant to 28 U.S.C. §

19   636(b)(1).[1]

20        Presently before the court is defendant Vega's motion to dismiss, filed May 15, 2015.

21   (ECF No. 16.)  Plaintiff has filed an opposition, to which defendant has filed a reply.  Also before

22   the court is plaintiff's motion to admit evidence, filed September 25, 2015. (ECF No. 27.)

23   Plaintiff also filed a document appearing to allege new claims on November 2, 2015.  (ECF No.

24   28.)  Having reviewed this document as well as the motions and any filings in support of and in

25   opposition to the motions, the court now issues the following order.[2]

26   _____

27   [1]  This action is before the undersigned pursuant to the parties' consent to proceed before a
     magistrate judge.  28 U.S.C. § 636(c).

28   [2]  Defendant's motion was taken under submission without a hearing.  (ECF No. 23.)  A hearing
     is also unnecessary for plaintiff's motion.

                                            1

1   I.  BACKGROUND

2          This action is proceeding on the first amended complaint ("FAC"), filed March 4, 2015.

3   (ECF No. 8.)  Plaintiff alleges that defendant Vega, an employee of the San Joaquin County

4   Human Services Agency who dispensed welfare benefits, took away his assistance through a

5   "coercive, intimidating, deceitful and punitive campaign including harassment while purportedly

6   investigating a report or grounds alleging that Plaintiff is not qualified to receive public

7   assistance."  (ECF No. 8 at 2.)  This "relentless campaign" was intended to "first terminate and

8   then disqualify plaintiff of nearly all life needs indigent class benefits…."  (Id.)  The FAC alleges

9   that plaintiff's procedural due process rights were violated because defendant provided only a

10  "right-to-sue status" and a post-termination proceeding wherein he was informed that all of his

11  public assistance had been summarily terminated.  This first claim is brought under 42 U.S.C. §

12  1983.  (Id.)  Plaintiff's second claim for relief is under the Americans with Disabilities Act

13  ("ADA"), for denying him procedural due process based on his disability.  He alleges that

14  although he is not "totally permanently disabled," he is confined to a wheelchair due to chronic

15  nerve and spinal pain, and is unable to work.  (Id. at 3.)  Plaintiff seeks compensatory damages.

16         Defendant moves to dismiss the amended complaint as moot because plaintiff has been

17  found eligible for benefits and is either receiving them or he has yet to submit an application and

18  supporting documentation for benefits.  The motion also seeks dismissal of the due process claim

19  and the ADA claim for failure to state a claim.

20  II.  LEGAL STANDARDS

21         Defendant has brought his motion pursuant to Federal Rule of Civil Procedure 12(b)(6),

22  for failure to state a claim, and also on mootness grounds.  "Because standing and mootness both

23  pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in

24  a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."  White v.

25  Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  Therefore, the motion will be analyzed under the

26  respective standards applicable to defendant's theories for dismissal.

27         A.  Rule 12(b)(1)

28         On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears

the burden of proof that jurisdiction exists.  See, e.g., Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Different standards apply to a 12(b)(1) motion, depending on the manner in which it is made.  See, e.g., Crisp v. U.S., 966 F. Supp. 970, 971-72 (E.D. Cal. 1997).

First, if the motion attacks the complaint on its face, often referred to as a "facial attack," the court considers the complaint's allegations to be true, and plaintiff enjoys "safeguards akin to those applied when a Rule 12(b)(6) motion is made."  Doe v. Schachter, 804 F. Supp. 53, 56 (N.D. Cal. 1992).  Presuming its factual allegations to be true, the complaint must demonstrate that the court has either diversity jurisdiction or federal question jurisdiction.  For diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff and defendant must be residents of different states.  For federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint must either (1) arise under a federal law or the United States Constitution, (2) allege a "case or controversy" within the meaning of Article III, § 2, or (3) be authorized by a jurisdiction statute.  Baker v. Carr, 369 U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

Second, if the motion makes a "factual attack" on subject matter jurisdiction, often referred to as a "speaking motion," the court does not presume the factual allegations of the complaint to be true.  Thornhill, 594 F.2d at 733.  In a factual attack, defendant challenges the truth of the jurisdictional facts underlying the complaint.  "Faced with a factual attack on subject matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6). . . . No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Id. (quotations and citation omitted).  The court may hear evidence such as declarations or testimony to resolve factual disputes.  Id.; McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).[3]

---

[3]  If the jurisdictional issue is intertwined with the merits of the case, the trial court cannot determine the jurisdictional issue until such facts are appropriately resolved.  See Roberts v. Corrothers, 812 F.2d 1173, 1177-78 (9th Cir.1987); see also Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987) (summary judgment standard applied if motion

1    B.  Rule 12(b)(6)

2        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

3    challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. J.P. Morgan Chase

4    Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

5    of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

6    plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

7    also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

8    a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

9    is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

10   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

11   factual content that allows the court to draw the reasonable inference that the defendant is liable

12   for the misconduct alleged."  Id.

13        In considering a motion to dismiss for failure to state a claim, the court accepts all of the

14   facts alleged in the complaint as true and construes them in the light most favorable to the

15   plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

16   however, required to accept as true conclusory allegations that are contradicted by documents

17   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

18   conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

19   1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

20   prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

21   to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

22   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

23   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

24   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

25   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

26   evaluating them under the standard announced in Iqbal).

27

28   determines facts where jurisdictional issue and merits are intertwined).

1   In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally

2   consider only allegations contained in the pleadings, exhibits attached to the complaint, and

3   matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506

4   F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not

5   consider new facts in a memorandum in opposition to a defendant's motion to dismiss to

6   determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections,

7   151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers

8   in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

9   (9th Cir. 2003).

10   III.  REQUEST FOR JUDICIAL NOTICE

11   Defendant has filed a request for judicial notice of various government records relating to

12   discontinuation and reinstatement of plaintiff's General Assistance ("GA"), CalFresh[4] and Medi-

13   Cal benefits, including notices of action in regard to these benefits, request for hearing,

14   administrative hearing decision, and notice of expiration of certification.  (ECF No. 16-2.)

15   All requests for judicial notice are granted pursuant to Fed. R. Evid. 201, as they do not

16   require the acceptance of facts "subject to reasonable dispute" and are capable of immediate and

17   accurate determination by resort to a source whose accuracy cannot reasonably be questioned.

18   See In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 781-82 (E.D. Cal. 1992); Fed. R. Evid.

19   201(b); Cal. ex. rel. RoNo, L.L.C. v. Altus Fin. S.A., 344 F.3d 920, 931 n. 8 (9th Cir. 2003).

20   The declaration of Joyce Solomon, submitted in conjunction with the exhibits attached to

21   defendant's RJN, may only be considered with respect to defendant's Rule 12(b)(1) motion to

22   dismiss on mootness grounds.  See McCarthy, 850 F.2d at 560.  It may not be considered in

23   conjunction with defendant's Rule 12(b)(6) motion as only the pleadings, exhibits or matters

24   subject to judicial notice may be considered in deciding such a motion.  Outdoor Media Group,

25   Inc., 506 F.3d at 899.  New facts, such as those contained in the Solomon declaration, may not be

26   ////

27

28   [4]  Food Stamps are now referred to as the CalFresh Program, which is known federally as the
Supplemental Nutrition Assistance Program.

1   considered in determining a Rule 12(b)(6) motion.  See Schneider, 151 F.3d at 1197 n. 1.[5]

2   IV.  Plaintiff's Motion to Admit Evidence

3          On September 25, 2015, after defendant's motion was taken under submission, plaintiff

4   filed a motion styled, "first motion in limine to admit evidence concerning federal jurisdiction

5   over [A] statutorily-based welfare claim."  (ECF No. 27.)  The motion "requests that the Court

6   permit Plaintiff to offer such portions of the State's evidence under Rules 404 and Rule 901 of the

7   Federal Rules of Evidence as made relevant by any defense that is ultimately presented."[6]  (Id. at

8   2.)  Attached to the motion are exhibits, one of which approves plaintiff's re-application for

9   CalFresh as of March 13, 2015, and is identical to the first page of defendant's Exhibit 6.  Cf.

10  Pl.'s Ex. A, ECF No. 27 at 5, to Def.'s Ex. 6, ECF No. 16-2 at 27.  Plaintiff's second exhibit is a

11  letter from Covered California, dated September 6, 2015, after defendant's motion was taken

12  under submission, which informs plaintiff that since he qualifies for Medi-Cal, his Medi-Cal

13  coverage would continue (unless he is found no longer eligible).  (ECF No. 27 at 7.)  This letter

14  confirms defendant's submission of evidence indicating that defendant authorized granting

15  plaintiff his Medi-Cal benefits.  (Solomon Dec., ¶ 7, ECF No. 16-3.)

16         Despite its untimeliness, plaintiff's motion is granted, and the court takes judicial notice of

17  his exhibits.

18  V.  ANALYSIS

19         A.  Mootness

20         As the court has an independent obligation to examine its own jurisdiction under Article

21  III, it will address mootness first.  See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 340 (2006)

22  (court always has a duty to examine its own subject-matter jurisdiction); Church of Scientology

23  of California v. U.S., 506 U.S. 9, 12, 113 S.Ct. 447 (1992) (court has no jurisdiction to consider

24  moot claims).  The case or controversy requirement of Article III, § 2 of the Constitution requires

25

26  [5]  Nor will the court transmute the motion to dismiss into one fort summary judgment.  Proper
    notice to this pro se plaintiff has not been given.

27  [6]  The motion mistakenly states that the action is brought pursuant to "the Social Security Act of
    1935, as amended, 81 stat. 898, 42 U.S.C. § 602, and 42 U.S.C. § 406," for breach of fiduciary

28  duties.

1   that "'the parties ... continue to have a personal stake in the outcome of the lawsuit.'" <u>Spencer v.</u>

2   <u>Kemna</u>, 523 U.S. 1, 7, 118 S.Ct. 978 (1998) (quoting <u>Lewis v. Continental Corp.</u>, 494 U.S. 472,

3   477-478 (1990)).  To invoke the jurisdiction of a federal court, a litigant must have suffered, or be

4   threatened with, an actual injury traceable to the defendant and likely to be redressed by a

5   favorable judicial decision…." <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477, 110 S.Ct.

6   1249 (1990) (citations omitted).  "A case is moot only if interim events have 'completely and

7   irrevocably eradicated the effects' of an allegedly improper ruling." <u>In re Pintlar Corp.</u>, 124 F.3d

8   1310, 1312 (9th Cir.1997) (quoting <u>Wong v. Dept. of State</u>, 789 F.2d 1380, 1384 (9th Cir.1986)).

9   "If there is no longer a possibility that [a party] can obtain relief for his claim, that claim is moot

10  and must be dismissed for lack of jurisdiction." <u>Ruvalcaba v. City of Los Angeles</u>, 167 F.3d 514,

11  521 (9th Cir.1999).  "Federal courts may not 'decide questions that cannot affect the rights of

12  litigants in the case before them' or give 'opinion[s] advising what the law would be upon a

13  hypothetical state of facts.'" <u>Chafin v. Chafin</u>, ―― U.S. ――, ――, 133 S.Ct. 1017, 1023 (2013)

14  (quoting <u>Lewis</u>, 494 U.S. at 477).  It is not sufficient that a dispute was alive when the action was

15  filed.  The parties must maintain a personal stake in the ultimate outcome of the lawsuit.  <u>Id.</u>

16  (quoting <u>Lewis</u>, 494 U.S. at 477-78).

17         Defendant moves to dismiss the action, claiming that plaintiff has been found eligible and

18  is receiving Medi-Cal and CalFresh benefits, and it is up to him to complete a new application for

19  GA benefits with proof of filing an SSI (Social Security Supplemental Income) application.  If

20  plaintiff were seeking injunctive relief, this court would have no jurisdiction to entertain

21  plaintiff's claims regarding denial of Medi-Cal benefits and Food Stamps because plaintiff has

22  been found eligible for these programs and is now receiving their benefits.  (Solomon Decl., ECF

23  No. 16-3, ¶¶ 7, 8; RJN Exs. 6, 7, ECF No. 16-2 at 26-32.)  <u>See</u> <u>Feldman v. Bomar</u>, 518 F.3d 637,

24  643 (9th Cir. 2008) (claim is moot when court lacks power to issue effective relief).

25         However, since plaintiff is seeking only damages, his claims are not moot.  "[T]he denial

26  of procedural due process [is] actionable for nominal damages without proof of actual injury."

27  <u>Carey v. Piphus</u>, 435 U.S. 247, 266-67, 98 S.Ct. 1042 (1978); <u>Bernhardt v. County of Los</u>

28  <u>Angeles</u>, 279 F.3d 862, 872 (9th Cir. 2002).  Compensatory damages are available for such

1   violations with proof of actual injury. Carey, 435 U.S. at 263-64.  But see Maricopa–Stanfield

2   Irrigation and Drainage Dist. v. United States, 158 F.3d 428, 434 (9th Cir.1998) (discussing that

3   damage claim may be too speculative to establish an injury-in-fact and confer standing).

4          Although Carey did not specifically address the issue of mootness, it implied that a case is

5   not moot as long as plaintiff seeks to vindicate his constitutional right through a claim for

6   nominal damages because such a recovery was warranted due to "the importance to organized

7   society that procedural due process be observed."  Id. at 266.

8          A live claim for nominal damages will prevent dismissal for
           mootness. See, e.g., Beyah v. Coughlin, 789 F.2d 986, 988–89 (2d
9          Cir.1986) (holding that, although plaintiff's claims for prospective
           relief may have been moot, case was not moot where complaint
10         sought compensatory and punitive damages because plaintiff might
           be entitled to recover nominal damages even if plaintiff could not
11         establish actual damages); Lokey v. Richardson, 600 F.2d 1265,
           1266 (9th Cir.1979) (per curiam) (holding that, although claim for
12         injunctive relief was mooted, case was not moot because plaintiff
           prayed for damages and, regardless of actual damages, plaintiff
13         could be entitled to nominal damages); see also Knight v. Kenai
           Peninsula Borough Sch. Dist., 131 F.3d 807, 812 (9th Cir.1997)
14         (holding that, although actual damages claim might be rendered
           moot, case was not moot because plaintiff could still obtain nominal
15         damages); Chew v. Gates, 27 F.3d 1432, 1437 (9th Cir.1994)
           (same).
16

17  Bernhardt v. County of Los Angeles, 279 F. 3d 862, 872–73 (9th Cir.2002).  See also Johnson v.

18  Chavez, 623 F.3d 1011, 1018-1019, and n. 2 (9th Cir. 2010) (citing Bernhardt and considering

19  plaintiff's prayer for relief, despite lack of specific request for nominal damages in original

20  complaint); DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1259 (11th Cir. 2007)

21  (claim for damages can save § 1983 claim from mootness where procedural due process violation

22  seeks nominal or compensatory damages).

23         Plaintiff's claims for CalFresh and Medi-Cal benefits, although reinstated, are not moot.

24  For example, assuming plaintiff can show a procedural due process violation, and he was denied

25  these benefits for a period of time after termination and before reinstatement, he may be able to

26  show he suffered some loss during the interim period for which damages are recoverable.  The

27  same principle is true for the GA benefits which have not yet been reinstated.

28         Joyce Solomon, supervisor of the GA Unit for San Joaquin County Human Services,

1   indicates that she has been unable to authorize GA benefits.  Her declaration explains:

> As of this date, Mr. Rodriguez has provided medical verification of his disability, however, he has not (1) applied for Social Security Supplemental Income ("SSI") and (2) filled out his "new application" for GA in accordance with GA regulations and, therefore, I cannot authorize GA benefits to him.  I have talked to Mr. Rodriguez several times over the telephone in the last two months and I have advised him that he may be eligible for GA benefits if he comes into the office to fill out a new GA application and we can guide him to assistance in filling out an SSI application, but he has not come into the Office for that assistance.  I have told him that we will do whatever it takes to help him complete the necessary documentation, but he has not taken us up on our offer.

(Solomon Decl., ECF No. 16-3, ¶ 9.)  See also General Assistance Administrative Hearing Decision, dated January 21, 2014 (finding that plaintiff failed to comply with the GA Monthly Income Report requirements by failing to submit a completed report for the month of September, 2013).  (RJN Ex. 3, ECF No. 16-2 at 12-17.)  Because plaintiff is seeking monetary relief, at least in part because of an alleged defective process of termination of benefits, his claim as it pertains to GA assistance is likewise not moot.

Plaintiff's second claim for relief, for discrimination based on his disability under the Americans with Disabilities Act ("ADA"), also is not moot.  Plaintiff's ADA claim is problematic for other reasons, namely that there is no individual capacity liability under the ADA.  Poole v. O.D.O.C., 2015 WL 1526527, *4 (D.Or. 2015).  See discussion infra.  Nevertheless, monetary damages are recoverable under the ADA even where the discriminatory conduct has terminated. Memmer v. Marin County Courts, 169 F.3d 630, 632 n. 3 (9th Cir. 1999).  Plaintiff must show deliberate indifference to his ADA rights.  Duvall v. County of Kitsap, 260 F.3d 1124, 1138-1140 (9th Cir. 2001).

Because plaintiff has alleged section 1983 and ADA claims for at least nominal damages, the complaint is not moot and the court finds it has jurisdiction to proceed to the merits of the claims.

### B. Procedural Due Process Claim

The FAC alleges violations of procedural due process under 42 U.S.C. § 1983 for terminating plaintiff's welfare benefits, which defendant has identified as Medi-Cal, Food Stamps

9

1    (CalFresh), and General Assistance.  The FAC does not specify whether Vega is sued in her

2    official or individual capacity.  If sued in her official capacity, defendant contends that plaintiff

3    has failed to allege a policy, custom or failure to train that Vega followed in terminating benefits.

4    If plaintiff seeks to impose liability on Vega in her individual capacity, defendant claims that

5    plaintiff has failed to allege a causal connection between Vega's actions and the constitutional

6    violation.

7          The Ninth Circuit presumes "that officials necessarily are sued in their personal capacities

8    where those officials are named in a complaint, even if the complaint does not explicitly mention

9    the capacity in which they are sued."  Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir.1999),

10   citing Shoshone–Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir.1994);

11   Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 n. 16 (9th Cir.1994).  Based

12   on this authority, both capacities will be addressed.

13         1.   The Nature of Plaintiff's Claim

14         The undersigned pauses here to flesh out the nature of plaintiff's claims as they relate to

15   this motion to dismiss.  At this stage, a motion to dismiss to determine whether plaintiff's benefits

16   were correctly terminated is beyond the work a motion to dismiss can do, i.e., factual issues must

17   be explored.  Thus, the motion to dismiss focuses on the *procedures* used to terminate benefits,

18   not the substance of whether they should have been terminated.

19         2.   Official Capacity

20         A damages claim against an official capacity defendant is equivalent to a claim against the

21   governmental entity represented by the official capacity defendant.  See Hafer v. Melo, 502 U.S.

22   21, 25, 112 S.Ct. 358 (1995).  Therefore, plaintiff's damages claim against defendant Vega in her

23   official capacity is equivalent to a claim against the county itself.  See Brewster v. Shasta County,

24   275 F.3d 803, 806–07 (9th Cir.2001) (County Sheriff represents county, not state, in

25   administering county jail).

26         Municipalities and other local government units such as counties are considered "persons"

27   under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation.

28   Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56

1    L.Ed.2d 611 (1978).  However, liability under § 1983 only exists if plaintiff shows that his

2    constitutional injury was caused by employees acting pursuant to the municipality's policy or

3    custom.  See Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir.2008) (citing

4    Monell 436 U.S. at 690–94).  In order for plaintiff to proceed on claims against defendant Vega in

5    her official capacity, plaintiff must show that the specific policies and practices she was following

6    were the moving forces behind the alleged violations of plaintiff's constitutional rights.  See

7    Gibson v. County of Washoe, 290 F.3d 1175, 1185–86, 1193–94 (9th Cir.2002).

8         "[T]here are three ways to show a policy or custom of a municipality: (1) by showing a

9    longstanding practice or custom which constitutes the standard operating procedure of the local

10   government entity; (2) by showing that the decision-making official was, as a matter of state law,

11   a final policymaking authority whose edicts or acts may fairly be said to represent official policy

12   in the area of decision; or (3) by showing that an official with final policymaking authority either

13   delegated that authority to, or ratified the decision of, a subordinate."  Villegas, 541 F.3d at 964

14   (internal quotations omitted).  Aside from showing an express policy or custom, "[a] plaintiff may

15   also establish municipal liability by demonstrating that (1) the constitutional tort was the result of

16   a 'longstanding practice or custom which constitutes the standard operating procedure of the local

17   government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy

18   such that the challenged action constituted official policy; or (3) an official with final policy-

19   making authority 'delegated that authority to, or ratified the decision of, a subordinate.'"  Price v.

20   Sery, 513 F.3d 962, 966 (9th Cir.2008) (citing Ulrich v. City & County of San Francisco, 308

21   F.3d 968, 984–85 (9th Cir.2002)); accord Villegas, 541 F.3d at 964 (Thomas, J., dissenting).

22        Not only has plaintiff failed to name defendant Vega in her official capacity, he has failed

23   to set forth any of the required elements to state a claim that Vega was acting pursuant to a

24   County policy or practice.  He has not alleged a custom or practice instituted by the County to

25   terminate or otherwise violate the rights of benefits recipients.  Nor has he alleged that Vega was

26   a policy maker[7] or that she was following any policy or custom instituted by the County, or that

27

28   _____
     [7]  The FAC alleges that Vega "dispenses welfare benefits."  (ECF No. 8, ¶ 4.)

11

1   even if she were following a policy she was delegated authority to follow or her actions were

2   ratified, that it caused the constitutional violation alleged.

3          Therefore, defendant's motion to dismiss will be granted in regard to any claim of a

4   procedural due process violation against Vega in her official capacity.

5                              3. Individual Capacity

6          Section 1983 can be used to impose personal liability on a government official in his or

7   her individual capacity for actions taken under color of state law.  Kentucky v. Graham, 473 U.S.

8   159, 165, 105 S.Ct. 3099 (1985).  "A person 'subjects' another to the deprivation of a

9   constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in

10  another's affirmative acts or omits to perform an act which he is legally required to do that *causes*

11  the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978)

12  (emphasis added).

13         "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official,

14  acting under color of state law, caused the deprivation of a federal right."  Kentucky v. Graham,

15  473 U.S. 159, 166 (1985) (emphasis in original).[8]

16         The Due Process Clause protects individuals from being deprived of life, liberty or

17  property without due process of law. U.S. Const. amend. XIV, § 1.  In order to state a cause of

18  action for deprivation of procedural due process, a plaintiff must first establish the existence of a

19  liberty interest for which the protection is sought.  Liberty interests may arise from the Due

20  Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466–68, 103 S.Ct. 864,

21  74 L.Ed.2d 675 (1983).

22         "When, however, a State creates a liberty interest, the Due Process Clause requires fair

23  procedures for its vindication-and federal courts will review the application of those

24  constitutionally required procedures."  Swarthout v. Cooke, 562 U.S. 216, 131 S.Ct. 859, 861,

25  _____

26  [8]  In addition to Kentucky, defendant points to a concurrence opinion in City of Oklahoma City v.
    Tuttle, 471 U.S. 808, 833 (1985) (Brennan, J., concurring), in support of its causation argument.
27  The portion of this case cited by defendant addresses Monell liability of a city under a policy or
    custom based on the isolated conduct of a single employee who carries no policy making
    authority, on a single occasion.  Defendant appears to have confused this official capacity
28  argument with her contentions regarding individual capacity liability.

862 (2011).  Where a government official fails to comply with state law that gives rise to a liberty

or property interest, a procedural due process violation may occur which can be redressed by 42

U.S.C. § 1983.  See Carlo v. City of Chino, 105 F.3d 493, 497-500 (9th Cir. 1997).  Nevertheless,

not every state law creates an interest protected by the U.S. Constitution.  "State law can create a

right that the Due Process Clause will protect only if the state law contains "'(1) substantive

predicates governing official decisionmaking, and (2) explicitly mandatory language specifying

the outcome that must be reached if the substantive predicates have been met.'"  James v.

Rowlands, 606 F.3d 646, 656 (9th Cir.2010) (quoting Bonin v. Calderon, 59 F.3d 815, 842 (9th

Cir.1995)).  In regard to termination of welfare benefits in particular, procedural due process

protections apply for those individuals statutorily entitled to them.  Goldberg v. Kelly, 397 U.S.

254, 260, 90 S.Ct. 1011 (1970).

"(D)ue process is flexible and calls for such procedural protections as the particular

situation demands."  Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893 (1976) (quoting

Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972).  Three factors must be

considered in making this determination:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

Id. at 335.

Particularly with respect to termination of welfare benefits, which is a property interest,

due process requires a pre-termination hearing "at a meaningful time and in a meaningful

manner."  Goldberg, 397 U.S. at 267.

To state a procedural due process claim, plaintiffs must allege: (1) a liberty or property

interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3)

lack of process.  See Wright v. Riveland, 219 F.3d 905, 913 (9th Cir.2000).

In analyzing a claim for violation of the right to procedural due process, the threshold

inquiry is whether defendant's conduct infringed a protected interest.  Once this initial test is met,

1   the court must then assess whether the process provided by defendants was constitutionally

2   adequate.  See Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864 (1983); Mathews v. Eldridge,

3   424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).  "An important government interest, accompanied

4   by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited

5   cases demanding prompt action justify postponing the opportunity to be heard until after the

6   initial deprivation."  Fed. Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 240, 108 S.Ct. 1780, 1787-

7   88 (1988).  "[W]here pre-deprivation process is feasible, it must be afforded before a person may

8   be deprived of a protected interest."  Finkelstein v. Bergna, 924 F.2d 1449, 1452 (9th Cir.1991).

9   　　　The Supreme Court has ruled that pre-deprivation procedures need not be elaborate and

10   are satisfactory if there is the opportunity "to present reasons, either in person or in writing, why

11   proposed action should not be taken...."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

12   545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).  When a full post-termination hearing is

13   available, the pre-termination hearing may be highly informal.  Loudermill, 470 U.S. at 546, 105

14   S.Ct. at 1495.  Thus, Loudermill's requirement of a meaningful opportunity to respond in a

15   predeprivation context entails merely the right to be informed of the "substance of the relevant

16   supporting evidence."  Brock v. Roadway Express, Inc., 481 U.S. 252, 264, 107 S.Ct. 1740, 1748

17   (1987) (plurality opinion).  Moreover, the predeprivation hearing "need not definitely resolve the

18   propriety of the [deprivation], but should be an initial check against mistaken decisions...."

19   Loudermill, 470 U.S. at 545, 105 S.Ct. at 1495.  See also Levine v. City of Alameda, 525 F.3d

20   903, 906 (9th Cir. May 13, 2008) (finding full post-termination hearing required because plaintiff

21   given no opportunity to respond prior to termination and citing to Loudermill which noted that

22   "adequacy of pretermination and post-termination hearings are interrelated and that the scope of

23   one affects the scope of the other").

24   　　　The three part test to be considered in determining whether administrative procedures are

25   constitutionally sufficient before a property deprivation occurs was set forth in Mathews v.

26   Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  It requires consideration of "(1) the

27   private interest that will be affected by the official action; (2) the risk of an erroneous deprivation

28   of such interest through the procedures used, and probable value, if any, of additional procedural

14

safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." Id. at 321.  Avoidance of extra costs associated with pre-deprivation hearings, as well as the government's interest in assuring safe health care for the public, have been held to be compelling governmental interests.  Varandani v. Bowen, 824 F.2d 307, 311 (4th Cir.1987).  Also held to be compelling is the government's interest in collecting revenues.  Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 2000 (1972).

Defendant Vega argues that the FAC fails to allege a causal connection between her conduct and the constitutional violation, and that plaintiff has failed to allege that Vega had a particular state of mind.  (ECF No. 16-1 at 7, 12.)

The FAC states in part:

> 6.  Early in 2014, Defendant Veronica Vega, and all of them, despite the absence of any evidence or probable cause to believe that Plaintiff might have been abusing or fraudulently obtaining public assistance benefits, commenced a relentless campaign to first terminate and then disqualify Plaintiff of nearly all life needs indigent class benefits and they would have succeeded except that State of California "Medi-Cal" medically-necessary benefits for the poor are no longer under their control.

(ECF No. 8 at 2.)

This paragraph sufficiently alleges that Vega caused the procedural due process violation, provided that there was such a violation.  The property interest at stake in this case is the benefits to which plaintiff claims he is entitled.  The fact that plaintiff is now once again receiving CalFresh and Medi-Cal benefits prove this point.[9]  Plaintiff has sufficiently alleged that he is also entitled to GA benefits.

This brings the due process analysis to the nature of the government's interest in utilizing the procedures which it does, the nature of the harm to plaintiff, and the nature of the pre-deprivation and post-deprivation procedures.  Although not stated, it can be reasonably inferred that the government benefits at issue here are not unlimited, and the government has an interest in

---

[9]  Although the Solomon declaration may not be considered for purposes of this portion of defendant's motion, the exhibits and the amended complaint both demonstrate that plaintiff is receiving these benefits.  (ECF Nos. 16-2 at 31, 27 at 7-8.)

1   ensuring the solvency of these programs.

2            Defendant's RJN sheds light on the procedures used and demonstrates that plaintiff was

3   provided all the process that was due.  According to the documentation submitted by defendant,

4   plaintiff was given a Notice of Action to Discontinue General Assistance Program on October 21,

5   2013, with the stated reason being failure "to provide September's Income Report documents."

6   With this notice, plaintiff was informed of his right to request an administrative hearing within

7   thirty days.  (Def.'s Ex. 1, ECF No. 16-2 at 7.)  Plaintiff was notified of his right to continue

8   receiving the same benefits while waiting for the hearing decision.  (Id. at 8.)  Plaintiff did request

9   and receive an administrative hearing.  (Def.'s Exs. 2, 3, Id. at 10, 12-16.)  With the hearing

10  decision, which informed plaintiff that he had failed without good cause to comply with the

11  Monthly Income Reporting requirements because he had not submitted a monthly income report

12  for September, 2013, plaintiff was also notified of his right to appeal.  (Id. at 16, 17.)

13           The Notice of Action to Discontinue General Assistance Program informed plaintiff on

14  October 21, 2013 that his GA would be stopped on October 31, 2013 because he failed to provide

15  September's Income Report documents.  It informed plaintiff that he may request an

16  administrative hearing within thirty days of the notice.  (ECF No. 16-2 at 7.)  The notice informed

17  the claimant of his hearing rights, as well as how to continue receiving benefits while waiting for

18  a hearing decision, including the requirement that a hearing must be requested before the effective

19  date of the action, the stipulation that if the County is found to be correct at the hearing, the

20  claimant will have to repay the County for extra benefits received OR the claimant will not be

21  eligible until serving the month sanction he should have served.  If the claimant chooses to

22  continue to receive benefits during the waiting period, he must still send in Job Search forms and

23  attend assigned Work Project days.  The claimant has the option to cut GA while waiting for a

24  hearing.  The claimant is also informed that he may bring a "friend, relative, attorney, or anyone

25  else" to the hearing.  The notice contains a form that the claimant may complete to request a

26  hearing, and the address where the request must be submitted.  If the claimant needs assistance

27  completing the request for a hearing, he may go to the HSA office and a Hearings Worker will

28  assist in filling out the hearing request.  (Id. at 8.)  Plaintiff completed a request for hearing on

16

December 11, 2013.  His request states, "

> On or about the first day of December, 2013 I was notified tele[ph]onically by a replacement or substitute caseload worker (not Ms. Divas, as she refuses to both take or return phone calls), that my benefits without first being given a written notice and opportunity to be heard as to same.  [Sic] I hereby formally request and demand a procedural due process hearing concerning any further pending actions that adversely affect [] interests.

(Id. at 10.)

The General Assistance Administrative Hearing Decision also describes why plaintiff's GA was denied, and sets forth the process due to plaintiff.  (ECF No. 16-2 at 12-16.)  First, plaintiff, as the GA applicant, must sign a form agreeing to submit a monthly Income Report as a prerequisite to receiving GA.  Plaintiff conceded that he did so and understood his responsibility in this regard.  (Id. at 12-13.)  The Administrative Hearing Decision sets forth all of the requirements and responsibilities of the applicant and recipient.  (Id. at 13-15.)  When a GA recipient fails to comply with the requirements, Notice of Action requirements must be followed. In particular, the regulation states:  "The beginning date of ineligibility for recipients shall be the first day of the month following the issuance of a timely Notice of Action or as soon as an adequate Notice of Action can be generated, whichever is appropriate."  (Id. at 15.)  If an applicant comes forward with good cause reasons for failure to comply with the program requirements, the San Joaquin County Human Services Agency ("HSA") shall make a good cause determination.  (Id.)  If the claimant fails to provide good cause, the proposed discontinuance of GA is sustained for a one month sanction period, and the claimant is permitted to reapply at any time.  (Id. at 16.)  A decision may be appealed from through a request for Second Level Review no later than "seven (7) days from the mailing or personal delivery date of the decision."  (Id. at 16-17.)  The standard of review at the second level is whether substantial evidence supports the hearing officer's decision.  "General Assistance is not issued while a Second Level Review is being conducted."  (Id. at 17.)

The declaration of Ms. Solomon, although indicating that plaintiff failed to apply for SSI or fill out a new application for GA and therefore these benefits cannot be authorized, may not be considered on a Rule 12(b)(6) motion.  (ECF No. 16-3 at 3, ¶ 9.)  Although the exhibits set forth

1   above explain the process due, the motion to dismiss fails to explain how due process was

2   provided to plaintiff, but argues only summarily that plaintiff has failed to allege a causal

3   connection between Vega's conduct and the constitutional violation.  Therefore, the motion to

4   dismiss is denied in this regard.  However, the amended complaint likewise fails to allege

5   specifically how defendant violated plaintiff's procedural due process rights.  Plaintiff will be

6   given leave to amend in regard to the GA claim.  The second amended complaint must state

7   exactly which part of the aforementioned regulations were violated.

8          In regard to Medi-Cal benefits, plaintiff was provided with a Notice of Action on January

9   17, 2013 which informed plaintiff of the proposed termination of his Medi-Cal benefits and his

10   right to a pre-termination hearing.  (Def.'s Ex. 4, ECF No. 16-2 at 19-20.)  The court will not

11   consider Ms. Solomon's declaration stating that plaintiff did not request a hearing and therefore

12   did not receive one.  (Solomon Decl., ECF No. 16-3 at 2, ¶ 4.)  Defendant has submitted no other

13   evidence in conjunction with her RJN to show that plaintiff did not request a hearing.  Nor has

14   defendant submitted any admissible evidence that plaintiff is now receiving Medi-Cal benefits.

15   Plaintiff has submitted a notice, dated September 6, 2015, informing him that he still qualifies for

16   Medi-Cal and that his coverage would continue.  (ECF No. 27 at 7.)  Because this notice is dated

17   over two and a half years after the January 31, 2013 notice of termination action of which

18   plaintiff complains, its relevance to plaintiff's claim is unclear.  Therefore, the motion to dismiss

19   will be denied in regard to this claim.  Plaintiff will be granted leave to amend to specifically

20   allege how his procedural due process rights were violated in regard to Medi-Cal benefits.

21          In regard to CalFresh benefits, plaintiff was given a Notice of Expiration of Certification

22   on May 6, 2014, and informed that he could request a hearing without termination of benefits if

23   he did so before the proposed termination on June 30, 2014.  (Def.'s Ex. 5, ECF No. 16-2 at 24-

24   25.)  Again, Ms. Solomon's declaration to the effect that plaintiff did not request an

25   administrative hearing and consequently none was provided, may not be considered at this stage

26   of the proceedings.  (ECF No. 16-3 at 2-3, ¶ 5.)  Nevertheless, in this instance, defendant has

27   submitted admissible evidence indicating that plaintiff's CalFresh benefits were reinstated as of

28   March 13, 2015.  (ECF No. 16-2 at 31.)

1    Plaintiff claims that defendant did provide a "'right to sue' status" and a post-termination

2    proceeding after deciding "summarily (impromptu and without a pre-termination hearing)

3    terminate all of Plaintiff's public assistance without affording him procedural Due Process;"

4    however, this conclusory allegation in the FAC (which is not verified) is not sufficient to state a

5    claim.  (ECF No. 8 at 2, ¶ 7.)  Plaintiff's opposition does nothing to further elucidate the matter or

6    enforce his position.  His only point in opposition is that "defendants continue to threaten

7    summary termination of aid pending resolution of a controversy over eligibility and to deprive

8    Plaintiff of those benefits which [he] is otherwise qualified to receive and which are the very

9    means by which to live while he waits."  (ECF No. 18 at 2.)  Plaintiff has submitted no other

10   argument whatsoever to refute defendant's motion, and has submitted no evidence, other than that

11   cited above, in support of his conclusory allegations.

12       Although it appears that plaintiff's benefits were denied, he has not shown that the

13   procedures employed were inadequate.  Plaintiff alleges no facts suggesting the appeals

14   procedures were deficient in any way or created a risk of "erroneous deprivation" of his benefits.

15   Mathews, 424 U.S. at 335.  In fact, the FAC makes no mention of appeals procedures whatsoever.

16   Plaintiff has therefore failed to refute defendant's showing that plaintiff's procedural due process

17   rights were not violated in regard to his Cal-Fresh claim.  Defendant has shown that plaintiff

18   received all the process that was due in regard to the Cal-Fresh benefits only.

19       In regard to the Medi-Cal and GA claims, although plaintiff has adequately alleged

20   causation, he has failed to state a procedural due process claim against defendant Vega in her

21   individual capacity.  Defendant has failed to submit admissible evidence that plaintiff's

22   procedural due process rights were satisfied in regard to the GA or Medi-Cal claims.  Therefore,

23   plaintiff may amend his complaint as to these benefits only.

24       C.  ADA Claim

25       The complaint also contains a claim under the Americans with Disabilities Act (ADA).

26   Title II provides that "no qualified individual with a disability shall, by reason of such disability,

27   be excluded from participation in or be denied the benefits of the services, programs, or activities

28

19

1   of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.[10]

2       Title II of the ADA was modeled after the Rehabilitation Act itself. Duvall v. County of

3   Kitsap, 260 F.3d 1124, 1135 (9th Cir.2001). Therefore, the elements of the ADA and RA claim

4   are functionally the same. In order to state a claim that a public program or service violated Title

5   II of the ADA, a plaintiff must show: he is a "qualified individual with a disability;" he was either

6   excluded from participation in or denied the benefits of a public entity's services, programs, or

7   activities, or was otherwise discriminated against by the public entity; and such exclusion, denial

8   of benefits, or discrimination was by reason of his disability. Simmons v. Navajo County, Ariz.,

9   609 F.3d 1011, 1021 (9th Cir.2010); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th

10  Cir.2004).

11      The ADA defines "disability" as a "physical or mental impairment that substantially limits

12  one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life

13  activities include, but are not limited to "caring for oneself, performing manual tasks, seeing,

14  hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning,

15  reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). In

16  Reese v. Barton Healthcare Systems, 606 F.Supp.2d 1254, 1261 (E.D.Cal. Dec. 15, 2008), the

17  court held that plaintiff's allegations were sufficient to state an ADA claim at the pleading stage.

18  The Reese plaintiff alleged she had a shoulder injury that rendered her permanently disabled, she

19  was substantially limited in the major life activities of lifting, sleeping and reaching, among

20  others, and her doctor wrote her a note stating her disability limited her work responsibility of

21  conducting echo exams. Id. The court ruled these allegations were "sufficient to put defendant

22  on notice of plaintiff's disability." Id. See also Benner v. Createc Corp., 2008 WL 2437726, at

23  *3 (E.D.Tenn. June 13, 2008) (holding plaintiff's allegations that she was disabled because of her

24  breast cancer and defendant fired her because of her disability sufficient to withstand motion to

25  dismiss).[11]

26  _____

27  [10]  Defendant mistakenly refers to 42 U.S.C. § 12112(a) which pertains to Title I, discrimination by an employer against a qualified individual in regard to employment. (ECF No. 16-1 at 13:21.) See Rios v. Cate, 2010 WL 5788967, * 2 (S.D. Cal. 2010).

28  [11]  In 2008, Congress passed the Americans with Disabilities Act Amendments Act of 2008

1    "In suits under Title II of the ADA ... the proper defendant usually is an organization

2    rather than a natural person.... Thus, as a rule, there is no personal liability under Title II."

3    Tenerelli v. Shasta County Jail, 2015 WL 2159551, *3 (E.D.Cal. May 7, 2015) (quotations and

4    citations omitted).  Individuals are not proper defendants under Title II at of the ADA.  "[A]

5    plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual

6    capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation

7    Act."  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).  The proper defendant for an

8    ADA claim is the public entity responsible.  Everson v. Leis, 556 F.3d 484, 501 & n. 7 (6th Cir.

9    2009).

10    Defendant's motion on this claim will be granted with leave to amend.  The proper

11    defendant for this ADA claim is the public entity that allegedly denied plaintiff equal access to its

12    programs, San Joaquin County Human Services Agency.  Therefore, the ADA claim must be

13    dismissed against defendant Vega, with leave to amend to name the proper defendant and set

14    forth all elements of this claim as set forth above.

15    In his FAC, plaintiff concedes that he "isn't totally permanently disabled, i.e. confined to

16    a wheel-chair, a bed, a paraplegic, on prosthetic limbs" but that he had to stop working as a

17    "construction laborer in 2007 due to chronic nerve and spinal pain." (ECF No. 8 at 3.)  Plaintiff

18    is advised that on amendment, he must be able to state with truthfulness capable of verification

19    that he suffers from a disability as defined by the ADA.  He must set out exactly what his

20    limitations are, and how they prevent him from engaging in major life activities.  The FAC also

21    fails to allege how defendant Vega, acting for San Joaquin County, discriminated against plaintiff

22    based on his disability.  The FAC as written contains only bald conclusions of discrimination and

23    fails to state a *plausible* claim for this ground alleged.  Plaintiff is reminded that his claim for

24    relief must contain sufficient factual matter to state a claim to relief that is plausible on its face.

25    See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1973 (2009).  While this does not require

26

27    ("ADAAA"), Pub.L. No. 110–325 (2008).  The ADAAA broadened the definition of "disability"
     under the ADA.  For example, the ADAAA expanded the definition of "major life activities" and
28    modified the regulatory definition of "substantially limits."  See 42 U.S.C. § 12102(2), (4).

1  detailed factual allegations, the claim must contain more than labels and conclusions or a

2  formulaic recitation of the elements of a cause of action.  See Bell Atlantic, 550 U.S. at 555.

3      If plaintiff intends to proceed with a second amended complaint on the ADA claim, he

4  must name San Joaquin County Human Services Agency as a defendant, and he must set forth

5  sufficient facts to put this defendant on notice of how it allegedly discriminated against him.

6      Plaintiff is advised that any amended complaint must bear the civil docket number

7  assigned this case and must be labeled "Second Amended Complaint"; plaintiff must file an

8  original and two copies of the second amended complaint.  Plaintiff is advised that the court

9  cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete.

10  Local Rule 220 requires that an amended complaint be complete in itself without reference to any

11  prior or superseded pleading.  This is because, as a general rule, an amended complaint

12  supersedes any prior complaints.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an

13  amended pleading is filed, the original pleading no longer serves any function in the case.  Id.; see

14  also E.D. Cal. L. R. 220.

15  VI.  NOVEMBER 2, 2015 FILING

16      On November 2, 2015, plaintiff filed a document which appears to be a letter informing

17  the court of recent events in his life, and potential new claims.  Plaintiff is advised that the

18  incidents referred to are not related to the instant action, and therefore he should file open a new

19  action by filing a complaint if he intends to proceed with the claims referenced in this filing.  The

20  court has, however, taken note of plaintiff's information regarding his address.  (ECF No. 28 at

21  2.)

22  VII.  CONCLUSION

23      Accordingly, IT IS ORDERED that:

24      1.  Defendant's Request for Judicial Notice, filed May 15, 2015, (ECF No. 16-2), is

25  granted.

26      2.  Plaintiff's motion to admit evidence, filed September 25, 2015, (ECF No. 27), is

27  granted.

28      3.  Defendant's motion to dismiss, filed May 15, 2015, (ECF No. 16), is granted in part

1   and denied in part.

2          4.   The amended complaint is dismissed, with leave to file a second amended complaint in

3   accordance with the directives provided herein, within **twenty-eight (28)** days from the date of

4   service of this Order.  The second amended complaint must comply with the requirements of the

5   Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint

6   must bear the docket number assigned this case and must be labeled "Second Amended

7   Complaint;" failure to file a second amended complaint will result in dismissal of this action.

8          5.   The Clerk of the Court is directed to serve a second copy of this order on plaintiff at

9   another address in addition to his address of record: San Joaquin County South Jail, 999 W.

10  Mathews Road, French Camp, CA  95231.  <u>See</u> ECF No. 28.[12]

11  Dated: November 9, 2015

12                          /s/ Gregory G. Hollows

13                  UNITED STATES MAGISTRATE JUDGE

14

15

16

17  GGH:076/Rodriguez0158.mtd

18

19

20

21

22

23

24

25

26

27

28  ---
    [12]  The zip code reflected on plaintiff's filing is incorrect for this address.